# EXHIBIT A

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE SIXTH JUDICIAL CIRCUIT |
| COUNTY OF YORK | ) | C/A NO.:  2015-CP-46-02155 |
| | ) | |
| ROXANNE FALLS, Individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| CHARLOTTE GAYE SMITH, | ) | |
| | ) | ORDER GRANTING JOINT MOTIONS |
| Plaintiffs, | ) | TO ESTABLISH COVIL QUALIFIED |
| | ) | SETTLEMENT FUND AND TO APPROVE |
| vs. | ) | SETTLEMENTS BETWEEN THE |
| | ) | RECEIVER FOR COVIL AND (1) |
| CBS Corporation, et al., | ) | HARTFORD, (2) TIG, AND (3) SENTRY |
| | ) | AND TO KEEP CONTINUING |
| Defendants. | ) | JURISDICTION OVER THIS |
| In Re: | ) | QUALIFIED SETTLEMENT FUND |
| | ) | |
| Receivership of Covil Corporation by and | ) | |
| through its Receiver Peter D. Protopapas | ) | |
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE SIXTH JUDICIAL CIRCUIT |
| COUNTY OF YORK | ) | C/A NO.:  2015-CP-46-03456 |
| | ) | |
| TIMOTHY W. HOWE, Individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| Wayne Ervin Howe, deceased, and Jeanette | ) | |
| Howe, | ) | |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING JOINT MOTIONS |
| | ) | TO ESTABLISH COVIL QUALIFIED |
| vs. | ) | SETTLEMENT FUND AND TO APPROVE |
| | ) | SETTLEMENTS BETWEEN THE |
| Air & Liquid Systems Corporation, et al., | ) | RECEIVER FOR COVIL AND (1) |
| | ) | HARTFORD, (2) TIG, AND (3) SENTRY |
| Defendants. | ) | AND TO KEEP CONTINUING |
| In Re: | ) | JURISDICTION OVER THIS |
| | ) | QUALIFIED SETTLEMENT FUND |
| Receivership of Covil Corporation by and | ) | |
| through its Receiver Peter D. Protopapas | ) | |

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | ) | C/A NO.:  2019-CP-40-00076 |
| | ) | |
| CHARLES T. HOPPER and REBECCA | ) | |
| HOPPER, | ) | |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING JOINT MOTIONS |
| | ) | TO ESTABLISH COVIL QUALIFIED |
| vs. | ) | SETTLEMENT FUND AND TO APPROVE |
| | ) | SETTLEMENTS BETWEEN THE |
| | ) | RECEIVER FOR COVIL AND (1) |
| Air & Liquid Systems Corporation, et al., | ) | HARTFORD, (2) TIG, AND (3) SENTRY |
| | ) | AND TO KEEP CONTINUING |
| Defendants. | ) | JURISDICTION OVER THIS |
| In Re: | ) | QUALIFIED SETTLEMENT FUND |
| | ) | |
| Receievership of Covil Corporation by and | ) | |
| through its Receiver Peter D. Protopapas | ) | |
| | ) | |

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | ) | C/A NO.:  2018-CP-40-04680 |
| | ) | |
| JAMES MICHAEL HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING JOINT MOTIONS |
| vs. | ) | TO ESTABLISH COVIL QUALIFIED |
| | ) | SETTLEMENT FUND AND TO APPROVE |
| | ) | SETTLEMENTS BETWEEN THE |
| Advance Auto Parts, Inc., et al., | ) | RECEIVER FOR COVIL AND (1) |
| | ) | HARTFORD, (2) TIG, AND (3) SENTRY |
| Defendants. | ) | AND TO KEEP CONTINUING |
| In Re: | ) | JURISDICTION OVER THIS |
| | ) | QUALIFIED SETTLEMENT FUND |
| Receievership of Covil Corporation by and | ) | |
| through its Receiver Peter D. Protopapas | ) | |
| | ) | |

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | ) | C/A NO.: 2018-CP-40-04940 |
| | ) | |
| DENVER D. TAYLOR and JANICE TAYLOR, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | ORDER GRANTING JOINT MOTIONS |
| | ) | TO ESTABLISH COVIL QUALIFIED |
| vs. | ) | SETTLEMENT FUND AND TO APPROVE |
| | ) | SETTLEMENTS BETWEEN THE |
| Air & Liquid Systems Corporation, et al., | ) | RECEIVER FOR COVIL AND (1) |
| | ) | HARTFORD, (2) TIG, AND (3) SENTRY |
| Defendants. | ) | AND TO KEEP CONTINUING |
| In Re: | ) | JURISDICTION OVER THIS |
| | ) | QUALIFIED SETTLEMENT FUND |
| Receivership of Covil Corporation by and through its Receiver Peter D. Protopapas | ) | |
| | ) | |

This matter came before the Court on the joint motions of Peter D. Protopapas, as Receiver for Covil Corporation, an administratively revoked South Carolina corporation (the "Receiver"), Hartford Accident and Indemnity Company and First State Insurance Company (collectively "Hartford"), and TIG Insurance Company, as successor to Ranger Insurance Company ("TIG"); and Sentry Insurance, a Mutual Company ("Sentry") to establish a Qualified Settlement Fund under Section 468B of the Internal Revenue Code of 1986, as amended ("I.R.C.") to Approve the Settlements between the Receiver and each of Hartford, TIG, and Sentry, and to keep continuing jurisdiction over the Qualified Settlement Fund.  Having considered the joint motions, together with the exhibits submitted with these motions, the Court hereby decides the matter on the filings and rules as follows:

**FINDING RELATED TO CORONAVIRUS EMERGENCY PROCEDURES**

On April 3, 2020, the South Carolina Supreme Court issued an Order providing guidance to the courts of South Carolina to help ensure the continued operation of the courts during the

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

Coronavirus emergency. In the Order, the Supreme Court noted the impossibility of continuing the practice of conducting hearings on virtually all motions during this unprecedented time. The Supreme Court indicated South Carolina trial judges, after allowing all parties the opportunity to file responses to a motion, "may elect to not hold a hearing when the judge determines the motion may readily be decided without further input from the lawyers." *See* April 3, 2020 Order of the South Carolina Supreme Court. This Court advised all parties and non-parties by email of the opportunity to file briefs on or before March 30, 2020. The Court finds these motions have been fully and exhaustively briefed, and, after reviewing all submissions, the Court further finds that hearings on these motions are not necessary and may readily be decided without further input from the lawyers. Ruling on these motions is also in the best interest of the Receivership as delay in these perilous times threatens the assets of the Receivership and the proposed liquidation of those assets into a qualified settlement fund.

### FINDINGS REGARDING PARALLEL PROCEEDINGS

In the case of *Covil Corporation By Its Duly Appointed Receiver, Peter D. Protopapas v. Zurich, USF&G et al*. in the United States District Court for the District of South Carolina, Spartanburg Division, CA No. 7:18-3291-BHH, United States District Judge Bruce Howe Hendricks issued an Opinion and Order dated February 27, 2020 in which she reviewed comprehensively the procedural complexities of the insurance coverage case before her involving claims and cross-claims regarding the question of coverage of policies issued or allegedly issued by various insurance companies to Covil at various times between the l950s and 1993.

Judge Hendricks also detailed the responsibilities assigned to this Court regarding the trial of asbestos cases in South Carolina and the supervision of the Receivership of Covil. In her order, Judge Hendricks declined to issue a broad moratorium on further proceedings before this Court as

4

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

the Receivership Court. Judge Hendricks found: "It is abundantly clear that Justice Toal, for whom the undersigned has the highest respect, has done and is doing her best to keep the underlying state tort suits moving forward appropriately without interfering with the coverage issues pending here."

In this order, this Court intends to faithfully adhere to Judge Hendricks' rulings and stay out of ruling on coverage matters that are before Judge Hendricks' Court.[1]

With regard to these proposed settlements, these three settling insurers were parties to the case pending before Judge Hendricks, but each settling insurer has now been dismissed without prejudice from that proceeding. In each case, the settling parties indicated to Judge Hendricks that the requested dismissals were to be without prejudice because each settlement still required the approval of this Court. In addition, the Receiver filed with Judge Hendricks the proposed approval Orders submitted to this Court. The settling parties also advised Judge Hendricks that, upon the Receivership Court's approval, the parties would return to Judge Hendricks' Court in order to convert the dismissals without prejudice into final dismissals *with* prejudice. The non-settling insurers did not object to any of these motions even though the motions were predicated on this Court's considering the proposed Orders approving settlement to which they now object.

As to each settling insurer, Judge Hendricks signed the dismissals without prejudice on this basis, and as a result the settling insurers have all been dismissed from the above-referenced case

---

[1] Although the Objecting Insurers have taken the position that the Receiver and the Settling Insurers are seeking insurance rulings from this Court in requesting the approvals for these settlements, the Court notes that USF&G is the one that has sought substantive insurance rulings from this Court during this settlement approval process. The Court takes Judge Hendricks' order very seriously. It is disingenuous for non-party USF&G to assert such strident objections to this Court's adjudication of these joint settlement motions while, at the same time, USF&G has sought the exact types of rulings from this Court that are prohibited by Judge Hendricks' order. This Court rejects USF&G's blatant attempts to circumvent the spirit and substance of Judge Hendricks' directives.

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

in Judge Hendricks' court. Therefore, it is not possible for this Court to rule on the coverage matters pending before Judge Hendricks as this Court evaluates whether to approve the proposed settlements from the settling insurers, each of which has now been dismissed from Judge Hendricks' case.

## ASBESTOS DOCKET MANAGEMENT

The establishment of the Covil QSF, and the approval of the settlements made the basis of these motions and the Court's continuing jurisdiction over the Covil QSF, as provided for by I.R.C. Section 468B, all directly relate to this Court's responsibility to manage South Carolina's statewide asbestos litigation docket. Asbestos litigation is often repetitive, serial litigation, and many similar issues present themselves repeatedly for routine adjudication by this Court. To the extent any claims are made that are addressed in this order, this Court can use its experience in managing the South Carolina asbestos litigation to establish efficient procedures to address, at the outset, a variety of these recurring, housekeeping issues. The Court intends to do so as a way to streamline future asbestos proceedings and to minimize the burden on this Court and the litigants of these prospective filings if ever made. Throughout this order, in establishing the mechanism for treatment of future claims related to asbestos issues, the Court will exercise its inherent authority to manage its docket so as to maximize the efficiency of the procedures being established by way of this order.

## PROCEDURAL HISTORY

Covil Corporation was a business organized under the laws of the State of South Carolina and was previously incorporated in the State of South Carolina. Covil Corporation is alleged to have made, manufactured, sold, distributed, installed, removed and disturbed thermal insulation

materials that, at certain times, contained asbestos. As a result, Covil Corporation has been named as a defendant in numerous asbestos-related bodily injury actions (hereinafter "Asbestos Bodily Injury Suits"). Sentry's predecessor Hardware Mutual Casualty Company issued certain policies of liability insurance to Covil Corporation or its predecessors that were in effect from April 21, 1964 through March 31, 1970. Hartford issued certain policies of liability insurance to Covil Corporation or its predecessors that were in effect from 1977 to 1986. TIG's predecessor Ranger Insurance Company issued or allegedly issued certain policies of excess liability insurance to Covil Corporation or its predecessors that were in effect from 1976-1979.

As part of the Settlement Agreements at issue with these joint motions, Covil Corporation, through its Receiver, and each of Sentry, Hartford, and TIG, have entered into stipulations identifying the year, limits, and basic terms of these insurance policies, and of certain claims made policies issued by Evanston Insurance Company, now managed by an affiliate of TIG.

Beginning in or about 1976, Covil began being named as a defendant in Asbestos Bodily Injury Suits. Shortly thereafter, Sentry began participating in the defense of Covil. At that time, Covil was still a functioning business entity with its own corporate counsel.

In 1991, Covil ceased business operations. In 1993, the Secretary of State revoked Covil's corporate charter. However, Covil continued to be named as a defendant in Asbestos Bodily Injury Suits. Sentry, along with Zurich American Insurance Company and United States Fidelity & Guaranty Company, continued defending Covil after Covil ceased operations. Covil Corporation was aware that it had pending asbestos bodily injury suits when it ceased operations.

## ANALYSIS AND TREATMENT OF CONFIDENTIAL SETTLEMENT AGREEMENTS

The Receiver for Covil Corporation and Covil QSF LLC have entered into proposed Settlement Agreements with each of the settling insurers, Hartford, TIG, and Sentry. Sentry,

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

Hartford and TIG, jointly with Covil Corporation, have moved this Court to authorize the establishment of Covil QSF LLC as the Covil Qualified Settlement Fund ("QSF") for the defense and payment of Covil's Asbestos Bodily Injury Suits. The proposed Settlement Agreements provide that funds paid by Hartford, TIG, and Sentry as part of the Settlement Agreement will all be deposited into the Covil QSF. The Court has thoroughly reviewed each of the proposed Settlement Agreements. Covil and the settling insurers have asked that the settlement agreements remain sealed.

In weighing the factors outlined in Rule 41.1(c) of the South Carolina Rules of Civil Procedure, the Court finds there is no compelling reason to seal the aggregate amount of the settlements which is $44,500,000. However, the Court, while mindful of our state's public policy favoring the transparency of court proceedings, has reviewed the comprehensive settlement agreements in detail *in camera* and all submissions related to this Motion and finds Receiver has met his burden to show sealing the settlement agreements is proper and necessary under Rule 41.1(c) of the South Carolina Rules of Civil Procedure. Specifically, the Court finds that, although the litigation of asbestos suits is of great public importance, the specific terms of the liquidation of Receiver assets arising from a settlement between the Receiver and the settling insurance companies does not have great public significance.

The Court agrees with Receiver that the settlement agreements do not attempt to hide important or damaging information from the public and are only related to liquidating Receiver assets from three insurers who, in each instance, have voluntarily agreed to the liquidation for amounts in excess of their stated applicable policy limits. The Court holds that sealing the settlement agreements is necessary and beneficial to the public to ensure the longevity of the Qualified Settlement Fund and allow for the fair and just compensation of injured parties who may

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

have legitimate future claims against Covil due to asbestos-related injuries. This Court will retain continuing jurisdiction over the Qualified Settlement Fund and will be able to adjudicate any matter brought before the Court concerning these settlements and their transfer of funds to Covil QSF.

Although these settlement agreements fully resolve the disputes the Receiver has with TIG, Sentry, and Hartford, the Receiver is still deeply involved in disputes over other Receiver assets and is working towards a resolution with other Covil insurers in other forums.

The premature disclosure of the specific details of these settlement agreements could be misappropriated and could chill the Receiver's ability to equitably liquidate other Receivership assets. Furthermore, the underlying asbestos litigation is still ongoing, and sealing these settlement agreements will allow these asbestos cases to continue forward in the same manner in which other cases move forward. The Court further finds sealing the settlement agreements is the best way to balance the potential harm to the settling parties with the public interest, and there are no other alternatives in this case to protect the private interests of the settling parties.

## LIQUIDATION OF RECEIVERSHIP ASSSETS AND APPROVAL OF SETTLEMENTS

"A sale of receivership property by the receiver, under an order of court, is a judicial sale." *Hannon v. Mechanics Bldg. & Loan Ass'n of Spartanburg*, 177 S.C. 153, 180 S.E. 873, 876 (1935). "The courts of this state have uniformly exercised the power to order that a receiver, duly appointed, shall sell the real estate and other property of the person or corporation whose assets are in the hands of receivers, in order to distribute the proceeds among creditors, stockholders, and other parties interested, and to liquidate and wind up the affairs of such insolvent person or corporation." *Id.* at 876. Moreover, "it is often of great importance that such assets should be disposed of by a receiver, duly appointed, because of his special knowledge of such assets and

because the receiver takes manual possession and custody of the property for the purpose of disposing of it and distributing the proceeds." *Id.* Thus, when the Court deems it appropriate, it "may make an order to the receivers to sell at private sale, or the court may accept an offer made directly to the court, or it may ratify a sale already made." *Id.*

The Court has previously held that the insurance policies are in the possession of the Court under the receivership. Like any contractual right, the insurance contracts constitute property of Covil Corporation that may be liquidated by way of a sale. As part of the Settlement Agreements, Hartford, TIG, and Sentry have offered to buy back any policies that it or its predecessors may have sold to Covil Corporation or Covil Corporation's predecessors. Doing so will allow the insurance assets to be liquidated for use in the administration of the Receivership, and by the QSF for the defense of asbestos bodily injury suits and payment of asbestos bodily injury claims.

The Receiver and the Settling Insurers are seeking approval for the Receiver to sell the Receivership's property. Specifically, the Receiver is selling the insurance policies issued by the Settling Insurers to Covil back to the respective Settling Insurers to establish and fund a qualified settlement fund. This Court has jurisdiction over the assets of Covil through its un-appealed and unchallenged Order appointing Receiver dated November 2, 2018. Furthermore, South Carolina law vests this Court with discretion to dispose of the Receivership's assets and direct disposition of those assets.[2] The Court is further keeping continuing jurisdiction over the QSF and all of its assets.

---

[2] It is clear that this Court's jurisdiction extends over Covil's assets which include its insurance policies. *See Buist v. Merchant's & Planter's Bank* 65 S.C. 487, 489, 43 S.E. 958, 959 (S.C. 1903) (Receiver can liquidate property under Court supervision); *Clyburn v. Reynolds*, 31 S.C. 91, 105, 9 S.E. 973, 975 (1889) (Court can empower receivers to sell the assets of the receivership); *Montgomery & Crawford v Arcadia Mills*, 173 S.C. 464, 490, 176 S.E. 589, 599 (1934) (Receivership Court has the power to liquidate the rights of creditors pursuant to their priorities) *In re State ex rel Hutchinson*, 182 S.C. 369, 375, 189 S.E. 475, 477-78 (1937) (holding the power

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

## OBJECTIONS BY NON-PARTY INSURERS

USF&G and Zurich (collectively referred to as "Objecting Insurers") filed objections to the establishment of the qualified settlement fund and to this Court's approval of the proposed settlements.[3] The Objecting Insurers vigorously assert they are not parties to the case but still seek to object to establishment of the Covil QSF and the sale of Receivership assets. Although the existence of these settlements have been known to the Objecting Insurers for months, the Objecting Insurers have not intervened in any of these matters. If the Objecting Insurers wished to object to the establishment of the Covil QSF or to the approval of these settlements then they were required to seek leave to intervene in these cases. They chose not to do so.

In South Carolina, an insurer does not have standing to challenge a Court order issued in a case where the insurer is not a party. *See Narruhn v. Alea London, Ltd.*, 404 S.C. 337, 745 S.E.2d 90 (2013)(holding that a non-party insurer did not have standing to challenge an Order). As a result, the Objecting Insurers repeated assertion that they are non-parties to the case (and their decision not to intervene) is fatal to their objections because they do not have standing to challenge the Motions under their own theory.

To the extent the Objecting Insurers believe that they have standing to challenge the establishment of the Covil QSF or the liquidation of the Receiver's assets because of this Court's prior Orders Sanctioning Objecting Insurers for their misconduct, they are mistaken. The Court's

---

to appoint a receiver is vested in every circuit court of the State, and nowhere in the body of the law is there any limitation upon this authority); *Truesdell v. Johnson*, 144 S.C. 188, 142 S.E. 343, 345 (1928) (holding the effect of the appointment of the receiver is to take property and place it in the hands of a third party pending litigation); S.C. Code Ann. § 15-65-10.

[3] Covil's other known and solvent insurer, Pennsylvania National Mutual Casualty Insurance Company, chose not to object to the establishment of the qualified settlement fund or to any of these settlements. Furthermore, none of the asbestos Plaintiffs have objected to these settlements or the propriety of a Qualified Settlement Fund for future asbestos Plaintiffs.

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

prior Orders addressed an Objecting Insurer's violation of South Carolina's mediation rules and the Objecting Insurers' refusal to provide information required by this Court to manage its asbestos docket. Those orders do not form a basis for the Objecting Insurers to challenge the establishment of the Covil QSF or the routine disposal of Receivership assets.

If this Court were to reach the Objecting Insurers' objections, the Court has evaluated them and finds that they are without merit. The Objecting Insurers assert two arguments: (1) if the Court approves the settlement agreements, the Objecting Insurers contend that they would be deprived of purported contractual and equitable rights and (2) issuing an order to prevent suits against the Settling Insurers violates due process.

First, the Objecting Insurers argue that they will be deprived of rights of subrogation and contribution. Such an objection is without merit because the Receiver and the Settling Insurers proposed that the QSF stand in the shoes of the Settling Insurers in all respects, as provided for by federal law as set forth in 26 U.S.C. § 468B. Additionally, the Court finds that the Objecting Insurers are in no way harmed by these settlements because Settling Insurers have agreed to pay more in its settlement than the policy limits applicable to the Settling Insurers' responsive policies. And, this Court has kept continuing jurisdiction over the QSF and stands ready to address any claim properly brought to or against the QSF.

Furthermore, the Objecting Insurers failed to establish any contractual relationship with the Settling Insurers. USF&G contracted with Covil for defense and indemnification against Covil's potential liability to pay damages for, among other things, bodily injury during the policy period. USF&G did not contract with any of the Settling Insurers. To the extent that the Objecting

Insurers contend that subrogation or contribution are contractual rights, they are incorrect because subrogation and contribution are equitable rights.[4]

Subrogation is an equitable claim against a tortious third party. *Calvert Fire Ins. Co. v. James*, 236 S.C. 431, 435, 114 S.E.2d 832, 834 (1960). Specifically, "Where the tortious conduct of a third person is the cause of a loss covered by an insurance policy, the insurer, upon payment of the loss, becomes subrogated *pro tanto* by operation of law to whatever rights the insured may have against the wrongdoer." *Globe & Rutgers Fire Ins. Co. v. Foil*, 189 S.C. 91, 200 S.E. 97, 100; *Lucas v. Garrett*, 209 S.C. 521, 41 S.E.2d 212; *Pringle v. Atlantic Coast Line R. Co.*, 212 S.C. 303, 47 S.E.2d 722. Those types of rights are not implicated here.

As it pertains to the equitable remedy of contribution, the Objecting Insurers have failed to provide the Court with any documentation or information about the existence, let alone the potential value, of any such claims sufficient even to argue that these settlements (in excess of policy limits) impact the Objecting Insurers' theoretical, future claims. The Court believes that these sophisticated settlement agreements provide the Objecting Insurers with a mechanism to make claims and demands for contribution directly against the Covil Qualified Settlement Fund, which will be responsible for such claims, under this Court's careful and continuing supervision.

Second, the Objecting Insurers insinuate that this Court is issuing a "channeling injunction" that will deprive the Objecting Insurers of a property right in violation of their due process

---

[4] *Calvert Fire Ins. Co. v. James*, 236 S.C. 431, 435, 114 S.E.2d 832, 834 (1960) ("Legal subrogation is not dependent upon contract. The doctrine is an equitable one, founded not upon any fixed law, but upon principles of natural justice; its purpose is to require the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it; and it is to be applied according to the dictates of equity and good conscience in the light of the actions and relationship of the parties."); *Cooper v. Ga. Cas. & Sur. Co.,* 244 S.C. 286, 292, 136 S.E.2d 774, 777 (1964) ("The rule of contribution is an *equitable rule* and is based on the fact that those who insure or become sureties for the same duty ought [] share the results of the default.").

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP400494940

rights. To the contrary, the settling parties request that as part of the sale of a receivership asset, anyone that seeks to sue or make a Covil-related claim against a Settling Insurer should simply sue the Qualified Settlement Fund instead because the Qualified Settlement Fund is assuming all of the responsibilities of the Settling Insurers. The Court notes that this is no different than Zurich as the successor to Maryland Casualty Company's responsibilities to Covil or TIG as the successor in interest to Fairmont Specialty Insurance Company's responsibilities to Covil. Here, the Fund is within the exclusive jurisdiction of the Receivership and the Receivership Court, and as mentioned above, the Court intends to exercise its inherent authority to manage its asbestos docket to fashion a streamlined process for the Court and future litigants.

To the extent that the Objecting Insurers bring a contribution claim against the QSF before this Court, this Court can adjudicate all such claims: "The courts of this state have uniformly exercised the power to order that a receiver, duly appointed, shall sell the real estate and other property of the person or corporation whose assets are in the hands of receivers, in order to distribute the proceeds among creditors, stockholders, and other parties interested, and to liquidate and wind up the affairs of such insolvent person or corporation." *Hannon v. Mechanics Bldg. & Loan Ass'n of Spartanburg*, 177 S.C. 153, 180 S.E. 873, 876 (1935) (emphasis added).

For the foregoing reasons, this Court finds that, if it were to reach the Objections raised by non-parties Zurich and USF&G, those objections are without merit and are overruled. As such, the Court enters the following Findings of Fact and Conclusions of Law as to the Joint Motions to Approve Settlement Agreements and to Approve the QSF Formation.

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

## FINDINGS OF FACT

*A. Hartford-Covil Settlement Agreement*

1.1    The Receiver and Hartford have entered into a final comprehensive settlement agreement titled, "Confidential Settlement Agreement and Release" ("Hartford-Covil Settlement Agreement"). The Hartford-Covil Settlement Agreement resolves all disputes between Hartford and Covil under the policies Hartford issued to Covil.

1.2    The Hartford-Covil Settlement Agreement provides that Hartford shall transfer funds and claims to a Qualified Settlement Fund ("Covil QSF"), as defined by Section 468B of the I.R.C. and the regulations promulgated thereunder.

1.3    The purposes of the Covil QSF are to provide funds to pay for costs incurred by the parties in connection with claims, suits and demands alleging personal injury and bodily injury from alleged exposure to asbestos ("Covil Asbestos Suits"); to pay the legal fees of the parties related to such Covil Asbestos Suits; to pay for administrative and management costs; and to do all things necessary or appropriate in connection with the Covil QSF.

1.4    The Hartford-Covil Settlement Agreement provides for consideration that is fair and reasonable, in consideration for a release of rights against Hartford, commonly referred to as a policy "buy back," and the settlement has been concluded by means of good faith negotiations between the parties in connection with a mediation conducted pursuant to the Absolute Mediation Privilege.

1.5    The Hartford policies, allegedly issued or issued to Covil, or providing coverage to Covil, known and unknown, are being exhausted by and through this settlement.

1.6    Hartford, in addition to the transfer of cash to the Covil QSF, has also assigned to the Covil QSF, all claims for contribution, indemnification, subrogation and otherwise ("Contribution Claims"), which are equitable claims that Hartford has and to which it has

15

succeeded or will succeed by reason of its transfer of the settlement amount to the Covil QSF. In consideration therefor, Covil, Covil QSF, and Hartford agree and the only other parties to this case, the underlying asbestos plaintiffs, do not oppose that claims asserted against Hartford will be directed to the Covil QSF and shall not be brought against Hartford. As these are the only parties to this action, this requested relief is approved. This Court is not making any ultimate determination on such claims if ever made.

### B.    TIG-Covil Settlement Agreement

1.7    The Receiver and TIG Insurance Company have entered into a final comprehensive settlement agreement titled "Confidential Settlement Agreement and Release" ("TIG-Covil Settlement Agreement"). The TIG-Covil Settlement Agreement resolves all disputes between TIG Insurance Company and Covil under the policies TIG issued to Covil. The settlement agreement also resolves any claim that policies issued by Evanston Insurance Company ("Evanston") to Covil are responsive to Covil's asbestos suits by way of an acknowledgment that the Evanston policies are not responsive to Covil asbestos suits by virtue of the policies being "claims made" policies where the window of time for asserting claims has long since expired. The Covil-TIG Settlement Agreement was reached in good faith and provides for a fair exchange of consideration, and complies with law as set forth herein.

1.8    The TIG-Covil Settlement Agreement provides that TIG Insurance Company shall transfer funds and claims to a Qualified Settlement Fund ("Covil QSF"), as defined by Section 468B of the I.R.C. and the regulations promulgated thereunder.

1.9    The purposes of the Covil QSF are to provide funds to pay for costs incurred by the parties in connection with claims, suits and demands alleging personal injury and bodily injury from alleged exposure to asbestos ("Covil Asbestos Suits"); to pay the legal fees of the parties

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

related to such Covil Asbestos Suits; to pay for administrative and management costs; and to do all things necessary or appropriate in connection with the Covil QSF.

1.10    The TIG-Covil Settlement Agreement provides for consideration that is fair and reasonable, in consideration for a release of rights against TIG Insurance Company, commonly referred to as a policy "buy back," and the settlement has been concluded by means of good faith negotiations between the parties in connection with a mediation conducted pursuant to the Absolute Mediation Privilege.

1.11    The TIG policies, allegedly issued or issued to Covil, or providing coverage to Covil, known and unknown, are being exhausted by and through this settlement.

1.12    TIG Insurance Company, in addition to the transfer of cash to the Covil QSF, has also assigned to the Covil QSF all claims for contribution, indemnification, subrogation and otherwise ("Contribution Claims"), which are equitable claims that TIG has and to which it has succeeded or will succeed by reason of its transfer of the settlement amount to the Covil QSF. In consideration therefor, Covil, Covil QSF, and TIG agree and the only other parties to this case, the underlying asbestos plaintiffs, do not oppose that all similar Contribution Claims asserted against TIG Insurance Company by other insurers of Covil will be directed to the Covil QSF and shall not be brought against TIG Insurance Company or Evanston. As these are the only parties to this action, this requested relief is approved. This Court is not making any ultimate determination on such claims if ever made.

### C.    Sentry-Covil Settlement Agreement

1.13    The Receiver and Sentry have entered into a final comprehensive settlement agreement titled, "Confidential Settlement Agreement and Release" ("Sentry-Covil Settlement

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

Agreement"). The Sentry-Covil Settlement Agreement resolves all disputes between Sentry and Covil under the policies Sentry issued to Covil.

1.14    The Court is convinced the terms of the Sentry-Covil Settlement Agreement are the result of substantial arm's-length, good faith negotiations between the settling parties in connection with a mediation conducted pursuant to the Absolute Mediation Privilege..  The legal disputes between Sentry and Covil Corporation have been contested, and this settlement will avoid what would otherwise be years of contentious and expensive litigation.

1.15    Permitting the sale of the insurance policies is an appropriate and efficient method of liquidating the insurance policy assets.  The buyback will allow the Court, through the Receiver, to more easily manage Covil Corporation's assets and garner those assets for the defense and resolution of future Covil Asbestos bodily injury suits.

1.16    Likewise, to the extent Covil Corporation has any chose-in actions against Sentry, whether in tort, contract, law or equity, the release of any and all such claims as part of the Settlement Agreement is an efficient means of liquidating those assets so that they may be properly managed under the receivership. Upon completion and funding of the settlement to the Covil QSF LLC, Sentry's policies issued to Covil or under which Covil is entitled to benefits from Sentry, known and unknown, including but not limited to the policies described in the Policy Stipulation, are deemed forever extinguished and all insurance coverage potentially available under the policies are fully exhausted such that no further insurance coverage will be available under the policies, and Sentry shall have no obligation to make any other payment of any type whatsoever under those policies, including no obligation to make any payments for Covil Asbestos Bodily Injury Suits in the form of defense, indemnity, or otherwise.

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

1.17    The Court approves the buyback of the policies and authorizes the Receiver to execute whatever documents are necessary to complete the sale of the policies back to Sentry, thereby forever extinguishing any contractual obligations Sentry may have owed to Covil Corporation under the insurance policies.

1.18    Covil, Covil QSF, and Sentry agree and the only other parties to this case, the underlying asbestos plaintiffs, do not oppose that claims of against Sentry for contribution, indemnification, subrogation, spoliation, alter-ego, veil piercing, corporate successorship, bodily injury or other claims shall be directed to the Covil QSF. This Court ratifies the Agreement. Further, this Court is not making any ultimate determination on such claims if ever made.

1.20    Upon completion and funding of the settlement to the Covil QSF LLC, Sentry is forever relieved of any and all obligations it may owe in connection with Covil.

1.21    Covil, Covil QSF, and Sentry agree and the only other parties to this case, the underlying asbestos plaintiffs, do not oppose that claims any and all claims against Sentry relating to obligations arising out of Covil's Asbestos Bodily Injury Suits or other bodily injury or property damage liabilities, including any claims asserting that Covil was an alter ego of Sentry, if pursued, are directed to be filed against the Covil QSF for the reasons discussed above. This Court ratifies the Agreement. Further, this Court is not making any ultimate determination on such claims if ever made.

1.22    In 1991, as Covil was closing its business operations, a representative for Covil notified insurer-retained defense counsel for Covil that Covil would be selling its assets and discarding its corporate records (hereinafter "Covil's Historic Records"). Insurer-retained defense counsel retrieved Covil's Historic Records from Covil before they were destroyed and retained

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

those documents.  No evidence has been presented that, at any time, did Sentry come into possession of Covil's Historic Records.

1.23    Covil's Historic Records included a data tape that appears to have last been backed up in 1991.  There is no evidence that Sentry did, at any time, obtain the data tape.  There is no evidence that Sentry was ever notified of the data tape's existence when counsel obtained Covil's Historic Records in 1991 or thereafter until years later, after Peter Protopapas was appointed as the Covil Receiver.  At no time did Sentry instruct defense counsel to hide the data tape or conceal its existence.

1.24    On April 24, 2019, the Receiver filed a Summons and Complaint in the Richland County Court of Common Pleas asserting legal malpractice claims against the law firm of Wall, Templeton & Haldrup, P.A., and asserting causes of action against Sentry for aiding and abetting breach of fiduciary duty, breach of contract, bad faith failure to defend, bad faith processing of claims, negligence, declaratory judgment, and alter-ego/instrumentality.  In connection with this settlement agreement, the Receiver will dismiss its claims against Sentry in that case, with prejudice, and Sentry will assign, to the fullest extent permissible, its claims against Wall Templeton & Haldrup, P.A. to the Receiver.

1.25    Proceedings have taken place before this Court involving Covil, by its Receiver, and Sentry, a non-party.  In connection with those proceedings, Sentry has produced a very large volume of documents consisting of hundreds of thousands of pages of historical records and other documents.  Sentry has withheld certain documents due to privilege, and Sentry did not complete its production prior to reaching an agreement-in-principle with Covil.  However, Covil Corporation, through its Receiver, is satisfied that it has now reviewed adequate information to enter into the Settlement Agreement.  Moreover, by reviewing the documents produced by Sentry

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

and other carriers, Covil has been able to determine and stipulate to certain facts as set forth in the Court's Findings.

1.26    There is no evidence that Sentry hid, concealed, or destroyed any Covil-related evidence, nor that it was involved in any such conduct.

1.27    Sentry never directed counsel for Covil Corporation to not file an answer or otherwise protect Covil Corporation in any asbestos bodily injury suit, including but not limited to the suits of *James Michael Hill v. Advance Auto Parts, Inc., et al*., Civil Action No. 2018-CP-40-04680 and *Denver D. Taylor and Janice Taylor v. Air & Liquid Systems Corporation, et al*., Civil Action No. 2018-CP-40-04940.

1.28    Sentry did not receive notice from Jim Covil or any other current or former Covil agent, director, employee, officer, or representative of any actual or attempted service in *Hill* or *Taylor* prior to the defaults in those cases.

1.29    At no time did Sentry exercise any control over Covil Corporation beyond its contractual right to control the defense of those Covil asbestos bodily injury suits implicating or alleging exposures that may have fallen under a Sentry insurance policy.  Therefore, Covil never became Sentry's alter ego.

1.30    The Receiver is authorized to execute these Settlement Agreements and the Court hereby ratifies the execution of the Settlement Agreements.

1.31    The Settlement Amounts paid by the Settling Insurers shall be deposited into the Covil QSF and managed and used as specified in the Settlement Agreements and related documents.

D.    *Approval of Qualified Settlement Fund*

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP400494O

2.1    Treasury Regulation § 1.468B-1 authorizes the establishment of a Qualified Settlement Fund if the requirements of paragraph (c) of the section are met.

2.2    The requirements of Treasury Regulation § 1.468B-1(c)(2) have been satisfied, as the Hartford-Covil Settlement Agreement, the TIG-Covil Settlement Agreement and the Sentry-Covil Settlement Agreement all provide for the transfer of funds, claims and other things of value to the Covil QSF and each will resolve the Receiver's claims for coverage against Sentry, Hartford and TIG.

2.3    The limited liability company referenced above as "Covil QSF LLC" will be constituted and will operate as the Covil QSF.  This Court will keep continuing jurisdiction over Covil QSF LLC.

2.4    The assets of the Covil QSF are segregated from the assets of Covil, Sentry, TIG, and Hartford, satisfying the requirements of Treasury Regulation § 1.468B-1(c)(3).

2.5    The Hartford-Covil Settlement Agreement, the TIG-Covil Settlement Agreement, the Sentry-Covil Settlement Agreement, the establishment of the Covil QSF and the transfer of the funds to the Covil QSF pursuant to the terms of the Sentry-Covil Settlement Agreement, Hartford-Covil Settlement Agreement, and the TIG-Covil Settlement Agreement comply with law as set forth herein.

## CONTRACTS WITH ATTORNEYS

In its capacity as the Receivership Court, this Court has directed the Receiver to marshall the assets of Covil to make such assets available to meet the costs and expenses of Covil's Asbestos Suits, including Covil's insurance policies and proceeds. Further, in the order appointing the Receiver, this Court authorized the Receiver to "hire any person or company necessary to

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

accomplish any right or power under this Order." The Court finds that the Receiver has been diligent in carrying out these duties.

Immediately following his appointment as the Receiver for Covil, Mr. Protopapas retained a team of well-regarded law firms to litigate a number of complex claims, in multiple jurisdictions, against Covil's historic insurance carriers. Given Covil's complete lack of financial resources, each of these law firms agreed to assume the significant risk of undertaking this representation on the basis of contingent fee contracts.

The Receiver entered into contingent fee contracts with the following highly qualified law firms: Morgan Lewis Bockius, LLP ("Morgan Lewis"); Smith Robinson Holler DuBose and Morgan, LLC ("Smith Robinson"), and Rikard & Protopapas, LLC.

Morgan Lewis is a global law firm and is highly skilled and experienced in asbestos litigation and in complex insurance coverage litigation. Smith Robinson is, likewise, a highly regarded firm in the State of South Carolina and throughout the Southeast with experience in insurance coverage litigation. The Receiver also engaged lawyers with his own firm, Rikard & Protopapas, LLC, who are experienced in engaging in complex litigation and insurance coverage litigation.

Each of the law firms has fully performed their services under the contingency fee contracts, and as such, the Receiver seeks the Court's approval of the attorneys' contingency fee of thirty-three and one-third percent (33 1/3%) of the gross settlement amount between Covil and the settling insurers and approval of reimbursement costs incurred by the law firms to date.

Since his appointment, the Receiver has been actively involved in complex and aggressive litigation that has demanded the expenditure of extraordinary time and resources. The Receiver, through his professionals, has been engaged in litigation with the insurers that have hundreds of

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

filings. From the Court's perspective, these law firms have achieved remarkable results, in a compressed timeframe, and under difficult circumstances. The Court has been impressed by the quality of the work generated by these firms and the professionalism exhibited by each of the lawyers at these firms. Finally, the Court notes the remarkable results reflected in finalizing $44,500,000.00 in settlements to date in connection with this receivership, noting that Covil had no liquid assets when the receivership began. As such, the Court approves the attorneys' fee contracts and attorneys' fees in the amount of thirty-three and one-third percent (33 1/3%) of the gross settlement amount between Covil and the settling insurers, in addition to approval of reimbursement for costs incurred to date. In light of the attorneys' fee awarded, in part, to the Receiver's law firm, that attorneys' fee will be in lieu of any Receiver fee for the Receiver's extensive work to date.

IT IS THEREFORE ORDERED THAT

(1)    The Covil-Hartford Settlement Agreement is a reasonable settlement of disputes between Covil and Hartford;

(2)    Covil is selling, and Hartford is purchasing, all interests in the Covil policies, and this "buy back" of policy rights is being consummated in good faith;

(3)    The Covil Policies issued by, or allegedly issued by, Hartford to Covil, are exhausted and Hartford has no further obligation to make payments thereunder, including with regard to Covil Asbestos-Related Suits; and

(4)    Consistent with Hartford's assignment of Contribution Claims to the Covil QSF; Covil, Covil QSF and Hartford agree and the only other parties to this case, the underlying asbestos plaintiffs, do not oppose, that all Claims for contribution, indemnification, subrogation, or otherwise against Hartford by other insurers of Covil are barred, and directs that all such Claims

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

shall be brought or made solely to the QSF. The Covil QSF shall be entitled to substitute itself for Hartford in any such Claim upon motion brought to this or other court having jurisdiction over such Claims. This Court approves and ratifies the Agreement. Further, this Court is not making any ultimate determination on such claims if ever made.

(5)    The Covil-TIG Settlement Agreement is a reasonable settlement of disputes between Covil and TIG Insurance Company;

(6)    Covil is selling, and TIG is purchasing, all interests in the Covil policies, and this "buy back" of policy rights is being consummated in good faith;

(7)    The Covil Policies issued by, or allegedly issued by, TIG Insurance Company to Covil, are exhausted and TIG has no further obligation to make payments thereunder, including with regard to Covil Asbestos-Related Suits; and

(8)    Consistent with TIG Insurance Company's assignment of Contribution Claims to the Covil QSF; Covil, Covil QSF and TIG Insurance Company agree and the only other parties to this case, the underlying asbestos plaintiffs, do not oppose, that all Claims for contribution, indemnification, subrogation, or otherwise against TIG and/or Evanston by other insurers of Covil and/or by any other claimant are barred, and directs that all such Claims shall be brought or made solely to the QSF. The Covil QSF shall be entitled to substitute itself for TIG and/or Evanston in any such Claim upon motion brought to this or other court having jurisdiction over such Claims. This Court approves and ratifies the Agreement. Further, this Court is not making any ultimate determination on such claims if ever made.

(9)    The Court is convinced the terms of the Covil-Sentry Settlement Agreement are the result of substantial arm's-length, good faith negotiations between the settling parties conducted under the Absolute Mediation Privilege. The legal disputes between Sentry and Covil

Corporation have been contested, and this settlement will avoid what would otherwise be years of contentious and expensive litigation.

(10)    Permitting the sale of the insurance policies is an appropriate and efficient method of liquidating the insurance policy assets.  The buyback will allow the Court, through the Receiver, to more easily manage Covil Corporation's assets and garner those assets for the defense and resolution of future Covil asbestos suits.

(11)    Likewise, to the extent Covil Corporation has any chose-in actions against Sentry, whether in tort, contract, law or equity, the release of any and all such claims as part of the Settlement Agreement is an efficient means of liquidating those assets so that they may be properly managed under the receivership.

(12)    Covil and Sentry agree that upon completion and funding of the settlement to the Covil QSF LLC, Sentry's policies issued to Covil or under which Covil is entitled to benefits from Sentry, known and unknown, including but not limited to the policies described in the Policy Stipulation, are deemed forever extinguished and all insurance coverage potentially available under the policies are fully exhausted such that no further insurance coverage will be available under the policies, and Sentry shall have no obligation to make any other payment of any type whatsoever under those policies, including no obligation to make any payments for Covil asbestos bodily injury suits in the form of defense, indemnity, or otherwise.

(13)    The Court approves the buyback of the policies and authorizes the Receiver to execute whatever documents are necessary to complete the sale of the policies back to Sentry, thereby forever extinguishing any contractual obligations Sentry may have owed to Covil Corporation under the insurance policies.

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP400940

(14)     Covil, Covil QSF, and Sentry agree that claims of any asbestos bodily injury claimants, other insurers, or any other party against Sentry for contribution, indemnification, subrogation, spoliation, alter-ego, veil piercing, corporate successorship, bodily injury or other claims shall be barred and directed to the Covil QSF.  The other parties to these cases, the underlying asbestos plaintiffs do not object to this relief, and as such the Court approves and ratifies this agreement in connection with future asbestos filings, as noted above.  Further, this Court is not making any determination on such claims if ever made.

(15)     Covil, Covil QSF, and Sentry agree that any and all claims by underlying asbestos claimants, now and in the future, direct or derivative, against Sentry, including but not limited to "alter ego" or other veil piercing or corporate successorship claims are barred and must be directed to the Covil QSF.  The other parties to these cases, the underlying asbestos plaintiffs do not object to this relief, and as such the Court approves and ratifies this agreement in connection with streamlining future asbestos filings, as noted above.  Further, this Court is not making any determination on such claims if ever made.

(16)     Covil and Sentry agree that upon completion and funding of the settlement to the Covil QSF LLC, that Sentry is forever relieved of any and all obligations it may owe in connection with Covil.  The other parties to these cases, the underlying asbestos plaintiffs do not object to this relief, and as such the Court approves and ratifies this agreement in connection with future asbestos filings, as noted above.

(17)     Covil and Sentry agree that any and all claims against Sentry relating to obligations arising out of Covil's Asbestos Bodily Injury Suits or other bodily injury or property damage liabilities are forever ended, including any claims asserting that Covil was an alter ego of Sentry.  The other parties to these cases, the underlying asbestos plaintiffs do not object to this

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

relief, and as such the Court approves and ratifies this agreement in connection with streamlining future asbestos filings, as noted above.

(18)    Based on a stipulation between the parties, the Court finds that there is no evidence that Sentry hid, concealed, or destroyed any Covil-related evidence, nor that it was involved in any such conduct.

(19)    Based on a stipulation between the parties, the Court finds that Sentry never directed counsel for Covil Corporation to not file an answer or otherwise protect Covil Corporation in any asbestos bodily injury suit, including but not limited to the suits of *James Michael Hill v. Advance Auto Parts, Inc., et al.*, Civil Action No. 2018-CP-40-04680 and *Denver D. Taylor and Janice Taylor v. Air & Liquid Systems Corporation, et al.*, Civil Action No. 2018-CP-40-04940.

(20)    Based on a stipulation between the parties, the Court finds that at no time did Sentry exercise any control over Covil Corporation beyond its contractual right to control the defense of those Covil asbestos bodily injury suits implicating or alleging exposures that may have fallen under a Sentry insurance policy.  Therefore, Covil never became Sentry's alter ego.

(21)    The Receiver is authorized to execute the Settlement Agreement, and if the Settlement Agreement has already been executed, the Court hereby ratifies the execution of the Settlement Agreement.

(22)    As to Sentry only, this Court hereby vacates its prior rulings and findings in the Rule to Show Cause Proceedings, including but not limited to the rulings and findings in the attached Orders of September 19, 2019, and January 8, 2020. All findings and rulings in the Rule to Show Cause proceedings against any other insurer remain in effect, but the findings and rulings shall have no binding effect on or applicability to Sentry.

(23)     The Covil QSF, which is the Delaware limited liability company known as "Covil QSF, LLC," with Peter D. Protopapas, the duly ordered Receiver of Covil Corporation as its sole Member and Manager, is hereby established as a Qualified Settlement Fund in compliance with § 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulations §§ 1.468B, *et seq.*, in order to receive settlement proceeds and claims from the Sentry–Covil Settlement Agreement, Hartford-Covil Settlement Agreement and the TIG-Covil Settlement Agreement, as well as any future transfers of funds, claims or things of value relating to Covil or its assets, including its insurance policies;

(24)     The Receiver's Contracts with his lawyers are approved as set forth above, and

(25)     The Court retains continuing jurisdiction in accordance with Income Tax Regulation § 1.468B-1(c)(1) of all matters related to this Order.


IT IS SO ORDERED.


_____
HON. JEAN H. TOAL, CHIEF JUSTICE (Ret.)


SIGNED this _____ day of _____, 2020

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940

ELECTRONICALLY FILED - 2020 Apr 13 9:20 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4004940



### Richland Common Pleas

**Case Caption:**      Denver D Taylor  , plaintiff, et al vs   Air & Liquid Systems
Corporation  , defendant, et al

**Case Number:**      2018CP4004940

**Type:**      Order/Other

IT IS SO ORDERED.

s/ Jean H. Toal #2758

Electronically signed on 2020-04-10 16:50:51    page 30 of 30